Fritz WHITTINGTON, Plaintiff,

Daniel K. Johnson, Plaintiff–Appellant,

v.

James A. LYNAUGH, Director, Texas Department of Corrections, et al., Defendants–Appellees.

No. 87–6061
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

April 21, 1988.

Daniel K. Johnson, pro se.

Gabriel G. Quintanilla, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for defendants-appellees.

Before CLARK, Chief Judge, WILLIAMS and DAVIS, Circuit Judges.

PER CURIAM:

This is a classic case of a prison inmate making wholly unsupported allegations of a minor discrimination against him in his prison status, and then tying up the courts for three years, bedeviling the court with motion after motion still lacking in substance, ending in a pretrial hearing before the district court adjudging the case as frivolous and directing a sanction against the prisoner. The prisoner filed a timely appeal with this Court. We affirm.

This is a civil rights suit under 42 U.S.C. § 1983 filed by Fritz Whittington and later joined by appellant, Daniel Johnson. Whittington was dismissed from the case in the district court. Appellant Johnson claimed that the prison officials discriminated against him by failing to raise him to the level of Trusty II which would enable him to have some time outdoors. He is now at one of the lower trusty levels. His allegation was that he had been denied the higher status by the prison officials in retaliation for his having filed prior lawsuits against the Texas prison system. Serious status discrimination in retaliation for a prisoner exercising his right to go to court would violate a prisoner's civil rights. *See Wolff v. McDonnell,* 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). But as the district court held in this case, appellant's basic claim is that he has not been moved up the trusty ladder as fast as he believes he is entitled to be moved and that

the reason for this is retaliation against him. The critical part of this case is that the appellant has advanced nothing but the claim itself without the slightest support of any factual allegations.

If we were to hold that appellant by his allegations in this case had established a case which was entitled to the full panoply of discovery, appointment of counsel, jury trial and the like, we would be establishing a proposition that would play havoc with every penal system in the country. Prison administrators must classify and move prisoners. It is a virtual truism that any prisoner who is the subject of an administrative decision that he does not like feels that he is being discriminated against for one reason or another, such as the past filing of a grievance, a complaint about food or a cellmate, or a prior complaint that he was not being treated equally with other prisoners. If we were to uphold the further pursuit of appellant's complaint in this case we would be opening the door to every disgruntled prisoner denied the next level of trustyship, reassigned to another prison job, moved to another cell, claiming his shoes were uncomfortable, to bring such a suit.

After appellant filed his suit he then asked for discovery which in scope would have required the prison officials to supply him with a report on the qualifications and grounds for every prisoner's movement in the trusty structure. In other words, appellant was searching for a case of discrimination when he did not have one. The courts cannot possibly put a burden of this extent upon prison administration. He also moved for appointment for counsel, which in the exercise of discretion was denied.

Comment can usefully be made also upon appellant's claim that the rules are so completely established and final that there is no discretion which would justify failure to raise him to a higher level of trusty. Of course, the prison has guidelines for moving prisoners through the trusty systems. The dangers of discrimination would be far worse if they did not. But the assertion that there is no room for discretion in the

application of the guidelines is an absurdity merely in the statement.

A further indication as to the extent to which thousands of prisoners who feel they are discriminated against in prisoner classification actions could tie up the prison and court systems is manifested by the appellant in this case in his filings of approximately ten motions during the time the case was pending in the district court, including at least two motions asking that the court render a decision on his motions. Then when a decision was rendered immediately appellant would file another motion asking in great detail that it be reconsidered, and then if not given another decision quickly, at least once filed another motion that a decision be made. In other words, the record reveals that appellant in effect acted as if his case had priority over all the other cases in a busy federal district court, even though as yet he had never made any affirmative showing at all that he had a case.

Part of the delay in this case was occasioned by the appellant and his co-plaintiff undertaking to establish the case as a class action. From the time of that denial in June 1986, virtually nothing was done in the case except for a motion to reconsider the class action denial. Because of a change in district court judges, the case was reassigned to another federal district judge in the late summer of 1986.

In April 1987, a status conference was scheduled for the next month. Appellant's co-plaintiff did not show up for the status conference and did not participate in any way. His case was dismissed without prejudice. It really was not until May 1987, that appellant was pursuing the case on his own. Shortly thereafter, a pre-trial *Spears* hearing was scheduled to be held at the prison. *Spears v. McCotter*, 766 F.2d 179 (5th Cir.1985). Appellant immediately filed a motion objecting to the hearing on the ground that until he had been afforded the sweeping discovery he had asked for the hearing would not be fair. He also filed a second motion for appointment of counsel. Neither motion was acted upon specifically, but the hearing was held on July 30, 1987,

without counsel. In *Spears* we made clear the purpose of such a hearing by indicating that the purpose is to determine whether the prisoner is making a case "with a discernible and critical question of fact." We went on to state that if a prisoner's "petition relating to conditions of confinement contains only conclusory allegations," it is proper for the hearing to inquire if there is a factual basis for the allegations. 766 F.2d at 180.

The district judge who held the *Spears* hearing concluded that appellant advanced no facts to show that there was unconstitutional discrimination against him. The judge made the specific finding that his claim amounted to no more than a protest that he was not being moved up the trusty ladder as fast as he felt he was entitled to, with no factual support for that assertion, and that therefore no constitutional right was implicated. There is wording in the dismissal order of the district court that could be taken to indicate that there was no possibility of a constitutional right in the kind of custodial decision that is involved in movement of prisoners through the trusty system.

That statement must be recognized as being in the context of a case in which there is not the slightest indication of any discrimination on improper grounds. If a case were found where on matters of custodial status the specific reason proved for the change in status or the refusal to change custodial status was an unconstitutional discriminatory reason such as race, religion, or prior suit brought against the prison system, political views, educational level or the like, it would have to be concluded that there could be a civil rights remedy. But a carte blanche cannot be given prisoners simply to make such a claim and then make a blind search of all prison records to see if something cannot be found. That is the circumstance of this case.

■ We conclude therefore that the district court was correct in dismissing the case with prejudice as frivolous.

■ The court also directed that the amount of $15.00 be withdrawn from appel-

lant's prison account to "reimburse the court ... for court costs incurred in this action," as a sanction under Fed.R.Civ.P. 11. Since the entire claim of the appellant consists solely of "conclusory allegations" and at no time during the progress of the case and including the *Spears* hearing did he advance the slightest factual support for his allegations, yet he bombarded the court with motions costing the court time and the taxpayers' money which could well have been spent on more important things, we find the imposition of the sanction proper under the rule.

ORDER OF DISMISSAL WITH PREJUDICE AFFIRMED.

STAY OF ENFORCEMENT OF SANCTION ORDER VACATED.