**Robert L. HUMPHREY, Plaintiff,**

v.

**Sheriff Jim BOWLES, Defendant.**

**Misc. No. 2722–R.**

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 1, 1988.

Robert L. Humphrey, Dallas, Tex., pro se.

## MEMORANDUM OPINION

BUCHMEYER, District Judge.

This is a totally frivolous *pro se* suit by a prisoner under 42 U.S.C. § 1983. *It is, in fact, the twelfth groundless case filed by this same prisoner in the past 17 months.* Accordingly, this Court, following the lead of the Fifth Circuit—see *Gabel v. Lynaugh*, 835 F.2d 124 (5th Cir.1988); *Lay v. Anderson*, 837 F.2d 231 (5th Cir.1988); *Simmons v. Poppell*, 837 F.2d 1243 (5th Cir.1988); and *Whittington v. Lynaugh*, 842 F.2d 818 (5th Cir.1988)—will impose these sanctions upon the plaintiff, Robert L. Humphrey:

(i) Humphrey will be ordered to pay $360.00 (an amount which equals the filing fee in this case plus the filing fees for two related, but equally frivolous cases).[1]

(ii) Until this $360.00 is paid, Humphrey is prohibited from filing any other suits in this district,[2] unless leave is first obtained from this Court.

(iii) As funds accumulate in the account of Humphrey at the Dallas County Jail, or at the Texas Department of Corrections ("TDC"), the appropriate jail or prison officials shall withdraw this money and forward it to the District Clerk of this Court until the full amount of the sanctions ($360.00) has been paid.[3]

This opinion first discusses the recent Fifth Circuit cases cited above; it then describes the magnitude of the problem of frivolous prisoner cases in the Dallas Division of this District; and it concludes with an explanation of the reasons for the imposition of sanctions against the prisoner-plaintiff, Robert L. Humphrey.

## 1. THE FIFTH CIRCUIT

Beginning in January of 1988, the Fifth Circuit expressed its increasing concern over the filing of frivolous § 1983 civil rights actions by state prisoners. And, in the four cases discussed below, it imposed or approved sanctions against prisoners who had filed groundless suits or appeals.

### a. *Gabel v. Lynaugh*: "Recreational Lawsuits"

The Fifth Circuit described the magnitude of the problem in *Gabel v. Lynaugh*, 835 F.2d 124 (5th Cir.1988):

About one appeal in every six which came to our docket (17.3%) the last four months was a state prisoner's pro se civil rights case. A high percentage of these are meritless, and many are transparently frivolous. So far in the current year (July 1–October 31, 1987), for example, the percentage of such appeals in which

---

1. *Robert L. Humphrey v. Bob Knowles, Jail Commander*, CA 3–87–2945 (S.D.Tex. dismissed Dec. 22, 1987); *Robert L. Humphrey v. Sheriff Jim Bowles*, CA 3–88–1929–R (N.D.Tex. dismissed Aug. 31, 1988).

2. This prohibition includes both civil rights actions under 42 U.S.C. § 1983 and habeas petitions under 28 U.S.C. § 2254.

3. The prisoner-plaintiffs in *Prows v. Kastner*, 842 F.2d 138 (5th Cir.1988), made $185.00 per month and $125–145.00 per month, respectively, from their employment with the prison industry at TDC.

reversal occurred was 5.08. Partial reversal occurred in another 2.54%, for a total of 7.62% in which any relief was granted. The comparable figure for all appeals was almost twice as large, 14.3%. Over 92% were either dismissed or affirmed in full.

For the same period § 1983 prisoner appeals prosecuted without counsel were our largest single category of cases which survived long enough to be briefed and enter our screening process so as to require full panel consideration. The number of these stands at almost 22%, with the next largest category—diversity cases—coming in at 16%, federal question appeals at 14.5%, and both general civil rights cases and criminal appeals coming in at something over 11% each. *Such figures suggest that pro se civil rights litigation has become a recreational activity for state prisoners in our Circuit and that such action as we commence today in long overdue.* We give notice that future frivolous or malicious appeals will call forth like sanctions. (835 F.2d at 125, n. 1) (emphasis added).

*Gabel* affirmed the trial court's dismissal of a frivolous § 1983 suit by two state prisoners. However, the Fifth Circuit also imposed sanctions on the *pro se* plaintiffs —by ordering "the appropriate officials at TDC" to withdraw "the amount of $10.00" from the prison accounts of each of the plaintiffs and forward this money to the Clerk of the Fifth Circuit. In addition to noting that this action was "long overdue" in frivolous § 1983 suits by state prisoners, *Gabel* emphasizes:

> ... We do not sit as a means by which prisoner plaintiffs may punish the system—or to be punished ourselves—by the pursuit of frivolous or malicious appeals by disgruntled state prisoners. (835 F.2d at 125).

**b.** *Lay v. Anderson:*

## "Drowning the Legitimate Case"

Another factor is of equal importance: the obvious danger that the serious, legitimate § 1983 suits by state prisoners may become lost in the increasing flood of frivolous civil rights actions and habeas proceedings.[4] The Fifth Circuit made this clear in *Lay v. Anderson*, 837 F.2d 231 (5th Cir.1988):

> This court, *like the district courts in our circuit,* has recently witnessed a significant increase in the number of pro se, usually prisoner, civil rights actions. See *Gabel v. Lynaugh*, 835 F.2d 124, 125 n. 1 (5th Cir.1988). The large majority of these cases are without even arguable legal footing. The judicial time and resources they command are astonishingly large and divert considerable attention from other matters on our dockets. *Moreover, there is a serious threat that legitimate pro se petitions will drown in the cacophony of the groundless ones.* Taxing costs against an unsuccessful in forma pauperis litigant at the conclusion of his appeal is one way to defray the judicial and social burden imposed by these lawsuits.... (837 F.2d at 232–33) (emphasis added).

In *Lay,* the prisoner-plaintiff "had filed at least a half-dozen petitions for habeas corpus relief and several prisoner civil rights cases." Accordingly, in affirming the district court's dismissal of his latest case, the Fifth Circuit taxed costs of appeal ("at least the $105 court of appeals fees"), to be paid from the plaintiff's "prison account or any other source of assets or income he may have."[5] In addition, the Court imposed another sanction in *Lay:*

> ... Finally, we hold as further sanction that Lay may file no further appeal in forma pauperis in this court, unless the district court has certified such appeal is in good faith or Lay has paid the

---

**4.** See *Spears v. McCotter,* 766 F.2d 179, 182 (5th Cir.1985); *Watson v. Ault,* 525 F.2d 886, 890 (5th Cir.1976).

**5.** As in *Gabel,* the appropriate prison officials were ordered to withdraw this money "as funds accumulated in appellant's prison account," and forward it to the Clerk of the Fifth Circuit.

costs taxed in this appeal. (837 F.2d at 232).

### c. *Simmons v. Poppell*: No Unrestrained License for Pro Se Plaintiffs

In *Simmons v. Poppell*, 837 F.2d 1243 (5th Cir.1988), the Fifth Circuit addressed a third factor: whether it was appropriate to impose sanctions against a non-lawyer—a state prisoner who has filed a frivolous *pro se* § 1983 suit. The Court held that, *while caution must be exercised*, sanctions were appropriate:

> ... Although we are particularly cautious in the imposition of sanctions against pro se plaintiffs, *such litigants "are not granted unrestrained license to pursue totally frivolous appeals."* Id. at 233.[6] Here, Simmons was alerted by the district court that his action was frivolous, yet he proceeded to appeal. We are persuaded that Simmons should pay the costs of his appeal. Since he is an in forma pauperis petitioner, we order such costs, but not in excess of $75.00, be deducted in equal as possible installments from his prison account in amounts that will not deplete the account below $10.00 at the time of a payment. (837 F.2d at 1244) (emphasis added).

Similarly, in *Lay v. Anderson*, 837 F.2d 231, the Fifth Circuit stated:

> As a consequence of Lay's other cases, this Court has dealt with at least three additional appeals, none of which was successful. We have expressly warned Lay that his litigiousness must be controlled. *It is no answer to this problem to assert that Lay, untutored in law, must be given the benefit of the doubt on his errors. The volume of his litigation and evident sophistication of his arguments and procedural knowledge belie such a defense.* We firmly believe that an award of additional sanctions is necessary to force Lay to conform to acceptable standards in approaching this

court.... (837 F.2d at 233) (emphasis added).

### d. *Whittington v. Lynaugh*: Sanctions By The District Court

The three cases just discussed involve the imposition of sanctions by the Fifth Circuit for frivolous appeals. However, in *Whittington v. Lynaugh*, 842 F.2d 818 (5th Cir.1988), the Fifth Circuit affirmed a district judge who imposed sanctions against a state prisoner for the filing of a frivolous § 1983 suit.

In *Whittington*, the prisoner-plaintiff claimed that TDC prison officials had "discriminated against him by failing to raise him to the level of Trusty II which would enable him to have some time outdoors." The Fifth Circuit held:

> This is a classic case of a prison inmate making wholly unsupported allegations of a minor discrimination against him in his prison status, and then tying up the courts for three years, bedeviling the court with motion after motion still lacking in substance, ending in a pretrial hearing before the district court adjudging the case as frivolous and directing a sanction against the prisoner.

> . . . . .

> We conclude therefore that the district court was correct in dismissing the case with prejudice as frivolous.

The court also directed that the amount of $15.00 be withdrawn from appellant's prison account to "reimburse the court ... for court costs incurred in this action," as a sanction under Fed.R. Civ.P. 11. Since the entire claim of the appellant consists solely of "conclusory allegations" and at no time during the progress of the case and including the *Spears* hearing[7] did he advance the slightest factual support for his allegations, yet he bombarded the court with motions costing the court time and the taxpayers' money which could well have been spent on more important things, we find the imposition of the sanction proper

---

**6.** Citing *Clark v. Green*, 814 F.2d 221, 223 (5th Cir.1987).

**7.** *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

under the rule. (842 F.2d at 819–21).[8]

At first instance, one might think it was a rather hollow act for the courts to impose monetary sanctions against the prisoners in *Gabel, Lay, Simmons* and *Whittington.* This is not necessarily so. See, for example, *Prows v. Kastner,* 842 F.2d 138 (5th Cir.1988), in which one prisoner-plaintiff made $185.00 per month from his employment with the prison industry at TDC—and the second prisoner-plaintiff made $125–145.00 per month. The district court, accordingly, refused to permit them to proceed *in forma pauperis* unless each paid at least one-half of the standard filing fee for a civil case.

## 2. THE DALLAS DIVISION OF THE NORTHERN DISTRICT OF TEXAS

The problem of frivolous prisoner suits is becoming almost as great in the Dallas Division of the Northern District of Texas as it is in the Fifth Circuit. See *Gabel v. Lynaugh,* 835 F.2d 125, n. 1. This is illustrated by the chart attached as Appendix A—a simple comparison of the number of prisoner cases filed in the Dallas Division with the total number of cases filed in this division during a one-year period (July 1987–June 1988).

Of the 3,091 new cases filed in the Dallas Division during this period, the 192 *pro se* civil rights suits by prisoners represented 6.2%—and another 6.6% were the 205 petitions for writs of habeas corpus filed by prisoners. This means almost 13% of the cases filed during this one-year period were *pro se* actions by prisoners. And, during one month (July 1987), the percentage of new cases filed by prisoners even reached 21.2% of the new filings in the Dallas Division.

Because of the system of random assignments of new cases, the percentage may be larger for some judges in given months. For example, in June of 1988, *over 16% of the new cases assigned to this Court were frivolous § 1983 suits filed by state prisoners.* During this month, a single prisoner in the Dallas County Jail (Richard L. Lowe) filed three separate § 1983 cases; two of these were assigned to this Court, and both were dismissed because they were groundless.[9]

Just as the Fifth Circuit observed in *Gabel v. Lynaugh,* these figures suggest that the filing of frivolous *pro se* suits has become a "recreational activity" for some prisoners in the Dallas County Jail—that this presents the very real threat that "legitimate *pro se* petitions will drown in the cacophony of the groundless ones"—and that this Court may be "long overdue" in imposing sanctions for frivolous suits filed by prisoners.

These conclusions are, in fact, confirmed by the conduct of Robert L. Humphrey, the plaintiff in this case.

## 3. THE REASONS FOR SANCTIONS IN THIS CASE

This is a "classic case" for the imposition of sanctions against a prisoner who has abused the legal system. *Whittington v.*

8. See also *Kimble v. Beckner,* 806 F.2d 1256 (5th Cir.1986), where the Fifth Circuit "encouraged district courts to exercise their authority to avoid meritless litigation while preserving a forum for legitimate complaints. 'District courts are vested with especially broad discretion in making the determination of whether an IFP proceeding is frivolous.' *Green v. McKaskle,* 788 F.2d 1116, 1119 (5th Cir.1986)."

9. In one case (CA 3–88–1508–R), Lowe sued two clerks in the Dallas County District Clerk's office, complaining that the state judge had not ruled on his habeas petition; in the other (CA 3–88–1485–R), Lowe sued the state district judge, complaining that he was not given the opportunity to attend a "hearing that was had in the court." *These cases were not Lowe's first attempt to harass the courts or state officials:* in CA 3–88–024–H, filed on January 4, 1988, Lowe complained that two employees of the Texas Department of Human Services conspired to cause him to be convicted and lose the custody of his children; this complaint was dismissed, Lowe appealed, and the Fifth Circuit affirmed this dismissal on May 31, 1988. And, Lowe appealed this Court's dismissal of the other two suits—*and the imposition of sanctions identical to those imposed upon Robert L. Humphrey in this case*—but, on October 17, 1988, the Fifth Circuit affirmed both the dismissal and the sanctions in an unpublished opinion which held that Lowe's cases were, indeed, frivolous. *Lowe v. 304th Judicial District Court,* 860 F.2d 436 (5th Cir.1988) (unpublished opinion).

*Lynaugh,* 842 F.2d 818. A summary of the groundless cases filed by Robert L. Humphrey in the Dallas Division should leave no doubt about this.

### May 1987

On May 6, 1987, Robert L. Humphrey filed his first suit, under 42 U.S.C. § 1983 (CA 3–87–1194–T). At that time, he had been convicted of felony theft in the state court in Dallas. Humphrey sued the state trial judge and the "pettifogging prosecutor," alleging that various things were wrong in connection with his conviction (including a "speedy trial" violation and an "improper sentence"). He sought immediate release from jail, dismissal of other state criminal cases pending against him, and $120 million in actual damages and $5 million in punitive damages. *Magistrate William F. Sanderson* recommended dismissal of the case because:

> ... the claims pertain to the legality of Humphrey's confinement, and except for his claim for monetary damages, plaintiff seeks habeas corpus relief in this court. Accordingly, plaintiff must first seek habeas corpus relief pursuant to 28 U.S.C. § 2254 with reference to the case in which he has been convicted. This requires that he first exhaust state remedies as well.... [And] it is clear that defendant McDowell [the trial judge] and Heath [the prosecutor] are immune from a suit for monetary damages based upon the actions and conduct attributed to them in the present case....

Accepting these recommendations,[10] *Judge Robert B. Maloney* dismissed this case, pursuant to 28 U.S.C. § 1915(d), on June 11, 1987.

### June 1987

On June 1, 1987, Robert L. Humphrey filed his second § 1983 suit (CA 3–87–1389–T), naming as the defendants a "Bishop of the Episcopal Church." In it, Humphrey complained about his discharge "from his salaried pastoral position" in June of 1984; he sought actual damages of $1 million, punitive damages of $800,000.00, and a free college education for his kids "as it is the law of our church." *Magistrate Sanderson* recommended dismissal because there was no "state action" involved in "employment decisions within a private church organization." Accordingly, *Judge Maloney* dismissed this case on August 12, 1987.

### July 1987

On July 7, 1987, Humphrey filed his third § 1983 suit (CA 3–87–1701–H). This time he sued the Dallas County Commissioners because he was allegedly injured on October 6, 1986, in a "2–3 floor" fall of an elevator which served the Dallas County Jail. Humphrey requested "compensary and punitive damages in the amount of $200,000" and the right to see his own doctor instead of the "jail doctor." *Magistrate Sanderson* again recommended dismissal:

> It is well settled that the negligent acts of a government official causing physical injuries does not state a cause of action cognizable under the Civil Rights Act. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986). Therefore, the complaint at issue must be dismissed. Moreover, since it affirmatively appears from the complaint that none of the named Defendants participated in the conduct complained of, the complaint fails to allege a cognizable claim against any of them. *Baskin v. Parker,* 602 F.2d 1205 (5th Cir.1979).[11]

Accepting these recommendations, *Judge Barefoot Sanders* dismissed this case on August 12, 1987.

### September 1987

Although he failed to file a suit during the month of August 1987, Robert L. Hum-

---

**10.** In this case, Humphrey also sued the Preston Chrysler II Dealership, *from which he had stolen two cars.* This claim was dismissed because there was no allegation of any conduct by the dealership "which took place under color of state law."

**11.** Humphrey did not disclose his May 1987 lawsuit even though the form used in the Dallas Division for § 1983 suits specifically requests information about other federal or state lawsuits "dealing with the same facts involved in this action or *otherwise relating to your imprisonment.*"

phrey made up for this by filing two cases in September.

On September 2, 1987, Humphrey filed his first habeas petition under 28 U.S.C. § 2254 (CA 3–87–2156–D). In this case, he made attacks upon his state felony theft conviction and the 10–year sentence which resulted. Although these claims were almost identical to those in the § 1983 suit filed by Humphrey in May of 1987, he did not reveal that suit on the form used in the Dallas Division for § 2254 actions—which requests information about any state or federal "petitions, applications, or motions" concerning the "judgment of conviction and sentence" being attacked. Again, *Magistrate Sanderson* recommended dismissal because Humphrey had "effected a direct appeal which is presently pending in the Court of Appeals for the Fifth Supreme Judicial District at Dallas."[12] Accordingly, *Judge Sidney A. Fitzwater* dismissed this case on September 28, .1987.

On September 3, 1987, Humphrey filed another habeas petition, this one against the "Navarro County Sheriff" (CA 3–87–2157–G). Humphrey alleged that he had been wrongfully charged in three criminal actions pending in Navarro County (apparently because of hot checks he had written). *Magistrate Sanderson* recommended dismissal because Humphrey had a state habeas petition which was still pending in Navarro County:

> Petitioner was sentenced on or about October 2, 1986, to a term of ten years in the Texas Department of Corrections in criminal action No. F–85–96924–JL in a Criminal District Court of Dallas County, Texas, and in which Petitioner filed a direct appeals brief on July 2, 1987. He has pending criminal charges in four other felony cases filed in Dallas County District Courts.
>
> The charges which are at issue in the present action are the subject of a habeas corpus petition filed in Navarro County, Texas, on April 3, 1987. It appears that no action has been taken by the court in Navarro County nor has the

Texas Court of Criminal Appeals issued a decision on such application, a prerequisite to exhaustion of state remedies under Article 11.07, Texas Code of Criminal Procedure.

*Judge A. Joe Fish* accepted the Magistrate's recommendations and dismissed this case on November 26, 1987.

### December 1987

On December 15, 1987, Humphrey filed his next § 1983 action, this one against "Bob Knowles, Jail Commander" and "the Dallas Jail Medical Staff" (CA 3–87–2945–R). This time, Humphrey complained that he had not received proper medical treatment for a knee injury allegedly sustained on October 5, 1987, and sought $800,000 in damages and transfer from the jail to Parkland Hospital "because the jail medical staff had been negligent in treating him." In a memorandum opinion on December 22, 1987, this Court (*Judge Jerry Buchmeyer*) dismissed this purported § 1983 suit because it was frivolous:

> These claims do not state any grounds for relief under § 1983. As stated in *Martinez v. Griffin,* 840 F.2d 314 (5th Cir.1988):
>
> *"This case is one of an increasing number of examples of attempts by prisoners to use the courts as a general grievance procedure to complain about whatever matters having to do with their incarceration they do not like.* The courts are not the administrators of the prisons. The courts are not the general administrative grievance procedures set up to hear prisoner complaints. The jurisdiction of the federal courts basically is limited in the case of the treatment of state prisoners to violations of the United States Constitution and civil rights acts in suits brought under 42 U.S.C. § 1983.
>
> *"It is not for the federal courts to second-guess what is obviously careful diagnosis and adequate medical treatment just because a prisoner finds something to be unhappy*

---

**12.** Humphrey's brief in this direct appeal in the state courts had been filed on July 2, 1987—only two months before he filed his first federal habeas petition in this Division.

*about.* Then having failed on that claim, this prisoner undertook to throw in other claims about mistreatment which have nothing to do with this particular case. The entire case is frivolous and has wasted the time of the district court and this Court...." (840 F.2d at 314–15) (emphasis added).[13]

If the plaintiff is a pretrial detainee, he has not even suggested that the alleged delay in medical treatment was done "for a punitive intent." See *Cupit v. Jones,* 835 F.2d 82, 85 (5th Cir.1987). If he has already been convicted, the plaintiff does not even allege facts showing a "deliberate indifference to serious medical needs." *Martinez,* 840 F.2d at 314.

Again, on the form he completed for this § 1983 suit, Humphrey concealed the fact that he had filed five previous actions in the Dallas Division. If he had not done so, this Court would have known that Humphrey had already been convicted and *was not* a pretrial detainee (even though he was awaiting trial on additional state charges).

### February 1988

On February 4, 1988, Humphrey filed a § 1983 suit against the Jail Commander, the "Maintenance Staff" of the jail, and the Jail Standards Commission of the State of Texas (CA 3-88-0248-D).[14] In it, he complained that the showers at the Dallas County Jail did not function properly and that his cell was overcrowded (with at least four additional inmates over what he alleged to be the cell capacity). Humphrey sought actual damages of $2 million and punitive damages of $100,000 from each defendant and "repair of the jail showers." On September 21, 1988, *Magistrate Sanderson* recommended dismissal of most of this suit because:

(i) Any alleged breach of duty by the Texas Commission on Jail Standards, a state agency, does not give rise to a federal constitutional claim under § 1983. *Bush v. Viterna,* 795 F.2d 1203 (5th Cir.1986).

(ii) There "is no cognizable governmental entity or political subdivision" such as "the Maintenance Staff at the Jail."

Magistrate Sanderson did not recommend dismissal of the allegations made against the Jail Commander, Bob Knowles. However, similar claims were held by the Fifth Circuit to be baseless in *Starks v. Bowles,* 851 F.2d 1419 (5th Cir.1988), affirming Judge Robert B. Maloney's dismissal of a § 1983 suit brought by an inmate of the Dallas County Jail (CA 3-87-0201-T):

... [A]ccepting as true all of the factual allegations contained in the record and stating Starks' case as favorably as possible, we still are left with the claim that a state official violated a pretrial detainee's constitutional right of due process by housing him in a crowded space for an indeterminate length of time and forcing him to sleep on a floor mattress for nine days.

. . . . .

We decline to hold that Starks stated an actionable legal claim. The only "hardships" specifically alleged by Starks was that his housing area exceeded its usual capacity by a small amount and that he had to sleep on a floor mattress for a brief period. He did not claim that these facts adversely affected his health or safety. *Cf. Jones v. Diamond,* 636 F.2d 1364, 1373–74 (5th Cir.1981) (en banc) (combined impact of conditions in grossly overcrowded jail made "the confinement of pretrial detainees punishment per se"). Nor did he suggest that these conditions "were created by prison officials for a punitive purpose or with punitive intent." *See Cupit v. Jones,*

---

**13.** In *Martinez,* the Fifth Circuit did not impose sanctions because "the record indicates this prisoner has no money at all in a prison account." 840 F.2d at 315. But see *Gabel,* 835 F.2d at 125 and *Lay,* 837 F.2d at 233 (in which sanctions were to be paid "as funds accumulated in the [plaintiff's] prison account").

**14.** Needless to say, Humphrey did not reveal the facts that he had filed six previous actions in the Dallas Division—all of which had been dismissed because they were frivolous.

835 F.2d 82, 85 (5th Cir.1987). Moreover, the federal court's prior intervention in the Dallas County jail system rested on state, not federal, grounds, and we terminated the district court's retained jurisdiction to permit enforcement of newly enacted state laws by the Texas Commission on Jail Standards. *See Taylor v. Sterrett,* 600 F.2d 1135, 1141–45 (5th Cir. 1979). We suggest that Starks direct his complaints about any possible violations of state regulations to the proper authorities.

On October 11, 1988, *Judge Fitzwater* accepted the recommendations of the Magistrate and entered an order of partial dismissal. Then, on October 20, 1988, Judge Fitzwater stayed the remainder of the case (CA 3–88–0248–D) until Humphrey had complied with this opinion and had paid the $360.00 imposed "as a sanction for filing frivolous suits."

### March 1988

■ On March 9, 1988, Humphrey filed another petition for writ of habeas corpus (CA 3–88–0485–G), without disclosing that he had previously filed two habeas petitions and five § 1983 actions. Actually, this suit was the same one that Humphrey had filed on September 2, 1987. Again, *Magistrate Sanderson* recommended that the case be dismissed because of Humphrey's failure to exhaust his state remedies:

> ... An examination of Petitioner's prior state proceedings reflects that he has failed to exhaust state remedies on the grounds for relief presented in his present petition. His only collateral attack lodged against his Dallas County conviction in F–85–96924–JL filed in the Texas state courts was his habeas corpus application which the Texas Court of Criminal Appeals refused to act upon due to the pendency of his direct appeal (See Application No. 16,950–01).

. . . . .

Although the *pro se* petition raised some of the issues presented in the present § 2254 proceeding, none of the issues was ever raised in the direct appeals brief filed in the intermediate appellate court, and thus that court never had an opportunity to review the issues on which discretionary review was sought. Humphrey failed to present his grounds in a procedurally correct manner and therefore he has failed to satisfy the exhaustion requirement of § 2254. Accordingly he must present his grounds to the state courts pursuant to Article 11.-07, Texas Code of Criminal Procedure. e.g. See *Richardson v. Procunier,* 762 F.2d 429, 432 (5th Cir.1985).

On July 28, 1988, *Judge Fish* accepted these recommendations and dismissed the case. For the first time, Humphrey filed a notice of appeal from the dismissal of one of his cases. His request for a certificate of probable cause was denied on August 30, 1988, and *the obviously frivolous appeal is presently pending before the Fifth Circuit.*

### April 1988

On April 15, 1988, Humphrey filed another § 1983 action against Knowles, two jail "detention officers," and both the City of Dallas and Dallas County. This time, Humphrey alleged that the two detention officers had failed to serve him lunch on April 11, 1988 after they "promised" to bring him a tray—and that defendant Knowles and the City and County of Dallas had "stopped plaintiff's mail from arriving at the United States District Court." *Magistrate Sanderson* recommended dismissal of this suit:

> The facts surrounding Plaintiff's failure to receive lunch on April 11, 1988, appear to arise merely from a negligent oversight on the part of Defendants Childs and Freeman. It is well settled that the Due Process Clause is simply no implicated by a negligent act of an official causing intended loss of or injury to life, liberty or property. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986); *Bowie v. Procunier,* 808 F.2d 1142, 1143 (5th Cir. 1987). Although the complaint alleges that Plaintiff has been denied lunch on several occasions, it fails to give the iden-

tity of the jail personnel who were involved. Moreover, isolated episodes in which an inmate is overlooked in the distribution of meals, as distinguished from a deliberate and persistent denial of food, do not raise claims of constitutional dimension. *Hines v. Boothe*, 841 F.2d [623] 624 (5th Cir.1988).

As to Plaintiff's mail interference claim, the complaint fails to allege any personal involvement attributed to Bob Knowles, the Jail Commander, nor does it state facts sufficient to allege liability against either governmental entity. Accordingly, no § 1983 claim is stated against these Defendants. See *Bigford v. Taylor*, 834 F.2d 1213, 1220 (5th Cir. 1988); see also *Bennett v. City of Slidell*, 728 F.2d 762 (*en banc*) (5th Cir. 1984). Accordingly, Plaintiff has filed to state a claim upon which relief can be granted.

Following these recommendations, this § 1983 suit was dismissed by *Judge Fish* on July 6, 1988.

### August 1988

On August 17, 1988, Humphrey filed two suits.

■ The first was a § 1983 suit against Navarro County. In it, Humphrey alleged that he mailed a lawsuit to the Clerk of Navarro County on July 11, 1988 against that county's District Attorney "and the associated acts of a county businessman and merchants"—but that the County Clerk refused to file this suit because "this Court (sic) does not have Civil Jurisdiction over your type of case." Humphrey sought actual damages of $1 million and punitive damages of $800,000. Although Magistrate Sanderson has not yet made recommendations on this case, it is obvious that the case is frivolous and will be dis-

missed. See, e.g., *Reiter v. Crosier*, 814 F.2d 656 (5th Cir.1987), affirming the district judge's dismissal of a similar § 1983 action:

We agree with the district court's conclusion that federal subject matter jurisdiction is lacking. Federal district courts do not have general jurisdiction to review state court decisions and a litigant "may not obtain review of state court actions by filing complaints about those actions in lower federal courts case in the form of civil rights suits." *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir.1986). If the federal claim is pretextual and "made solely for the purpose of obtaining [federal] jurisdiction," the suit may be dismissed for want of jurisdiction. *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir.), cert. denied, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

See also *Brinkmann v. Johnston*, 793 F.2d 111 (5th Cir.1986) ("Errors committed by state judges in state courts are for correction in the state court system").[15]

The second August 17 suit was a petition for writ of habeas corpus (CA 3–88–1929–R), which was assigned to this Court (*Judge Jerry Buchmeyer*). The sole basis for this habeas petition was that Humphrey had supposedly been denied his right to a "speedy trial" under state law—*the very same claims he had made in his first § 1983 case, filed in May of 1987* (CA 3–87–1194–T). On August 31, 1988, this case was dismissed:

The plaintiff's petition also states that he has not been convicted and that he has entered not guilty pleas on all pending charges.[16] Presumably, he is awaiting trial in Criminal District Court No. 5 in Dallas County.

Any claim of a violation of the right to a speedy Trial must be presented to the

---

**15.** In affirming this Court's dismissal of a similar frivolous § 1983 suit filed by Richard L. Lowe (see note 9), the Fifth circuit held: "Lowe's request that the federal district court direct the state court to provide him with certain records is not within the power of the federal courts. *Moye v. Clerk, DeKalb County Superior Court*, 474 F.2d 1275, 1276 (5th Cir. 1973) (mandamus)." *Lowe v. 304th Judicial Dis-*

*trict Court*, 860 F.2d 436 (5th Cir.1988) (unpublished opinion).

**16.** Humphrey did not disclose that he had, in fact, been convicted on other state charges (see the description of the May 1987 suit filed by him). *Nor did Humphrey reveal the fact that this was the 11th action he had filed in the Dallas Division.*

trial court—and can be appealed only *after* a trial and a conviction. Until this occurs, the plaintiff has no right to bring a petition for writ of habeas corpus in the federal court.

Accordingly, the petition for writ of habeas corpus is dismissed without prejudice.

### *September 1988*

*On September 12, 1988,* Robert L. Humphrey filed his "Declaration In Support of Request to Proceed In Forma Pauperis" in the present case (Misc. 2722). He sought leave to file without cost a habeas petition attacking his convictions *on September 7, 1988* for felony theft and the sentences of 15 and 5 years which he had received on these convictions. The sole basis for his attack was the claim that his "speedy trial" rights had been violated. Although this claim had been made in his first § 1983 case in May 1987 (CA 3–87–1194–T) *and* in the supposed habeas case filed on August 17, 1987 (CA 3–88–1929–R)—and dismissed by the Court on August 31, 1988—neither of these suits, nor any of the other actions filed by Humphrey, were revealed on the § 2254 form which he completed. *Magistrate Sanderson* recommended that Humphrey's request to proceed in forma pauperis in a § 2254 proceeding be denied:

The petition reflects that he is seeking habeas corpus relief based upon denial of his request for a speedy trial. Humphrey filed an identical claim in CA 3–88–1929–R which was dismissed without prejudice by a judge of the District Court for failure to exhaust state remedies.

It affirmatively appears from the pleadings now submitted that Humphrey has not exhausted state remedies. *Richardson v. Procunier,* 762 F.2d 429 (5th Cir.1985). His attempted filing of the present petition is in direct contravention of the District Court's prior order, and

It is, therefore, recommended that his request to proceed in forma pauperis be denied, but without prejudice to his right to seek federal habeas corpus relief after exhausting state remedies.

Accordingly, on October 19, 1988, this Court accepted Magistrate Sanderson's recommendations and denied Humphrey's request to proceed *in forma pauperis* in this case.

### SUMMARY

 Including the present case (Misc. 2722), Robert L. Humphrey has filed 12 *pro se* suits in the Dallas Division—six actions under 42 U.S.C. § 1983 and six habeas petitions under 28 U.S.C. § 2254—within a period of 17 months. Every one of these suits was frivolous.

In his § 1983 actions, Humphrey has sued a state district judge, the state prosecutor, a Chrysler dealership, a Bishop, the Dallas County Commissioners, the Dallas County Sheriff, the Jail Commander, the "medical staff" of the Dallas County Jail, the jail "maintenance staff," the City of Dallas, Dallas County, and others. In his habeas petitions, Humphrey has attacked pending state charges as well as his convictions and sentences—even though he had either direct appeals or habeas petitions pending at the same time in the state courts. *Indeed, his request to proceed in forma pauperis with a habeas petition in this case was filed only five days after the state court conviction he wants to attack.*

In the orders of dismissal entered in his cases, Humphrey has been repeatedly advised why his actions are groundless—for example, that state judges and prosecutors are immune from § 1983 damage suits; that private entities may not be sued under § 1983 because there is no "state action"; that claims of negligence (a falling elevator, medical treatment) do not raise constitutional issues under § 1983; and that *he must exhaust his state remedies and present any legal attacks on his convictions and sentences to the state courts—* first by direct appeals, and then by habeas petitions—before they may be presented to the federal court.

Moreover, the number of suits filed by Humphrey, as well as the nature of some of his claims—the jail showers do not work, he was not served lunch, he wants to see his own doctors because the jail medical

staff is negligent, there were four prisoners too many in his cell for some period, etc.—demonstrates that his conduct in filing frivolous claims will continue. This is, indeed, an aggravated example "of attempts by prisoners to use the courts as a general grievance procedure to complain about whatever matters having to do with their incarceration they do not like." *Martinez v. Griffin*, 840 F.2d at 314.

The valuable time and effort of Magistrate Sanderson have been wasted on 12 frivolous suits filed by Humphrey. In addition, Humphrey's groundless suits have needlessly consumed the time of the judges of the Dallas Division: Judge Sanders (1 case); Judge Buchmeyer (3 cases); Judge Fish (4 cases); Judge Maloney (2 cases); and Judge Fitzwater (2 cases). As stated in *Gabel,* we should not "sit as a means by which prisoner-plaintiffs [like Humphrey] may punish the system" or the courts with repeated "frivolous or malicious" suits and appeals. (835 F.2d at 125). Therefore, if we have granted Humphrey "an unrestrained license to pursue totally frivolous" cases—either through inadvertence or through Humphrey's concealment of the previous groundless suits he had filed— then we will do so no longer.[17]

As discussed at the beginning of this opinion, the Fifth Circuit has "encouraged district courts to avoid meritless litigation while preserving a forum for legitimate complaints." It has expressed concern at the magnitude of the problem created by frivolous or "recreational" prisoner suits— and it has stressed that "taxing costs against an unsuccessful *in forma pauperis* litigant ... is one way to defray the judicial and social burdens imposed by these lawsuits." [18]

Accordingly, sanctions will be imposed against Robert L. Humphrey for the three frivolous suits assigned to this Court.[19] He will be ordered to pay $360.00, an amount which equals the filing fees for these three cases. And, to attempt to make this sanction effective, any funds which accumulate in Humphrey's inmate account—either at the Dallas County Jail or at TDC—will be impounded for the payment of this $360.00.[20] Finally, in order to make certain that Humphrey does not continue to abuse the legal system and the courts, he will be prohibited from filing any other civil suits in this district of any nature—including suits under § 1983 and habeas petitions under § 2254—until this $360.00 is paid, unless leave is first obtained from this Court.

---

17. Obviously, sanctions should be imposed *before* a state prisoner has filed 12 baseless suits like Humphrey. Accordingly, this Court has just imposed similar sanctions against a Dallas County jail inmate who filed six frivolous cases in the past seven months (*Michael Allen Runyon*), and against two others—*Timothy John Adkisson* and *Richard L. Lowe* (see note 8)— who filed four totally frivolous actions in only three months.

18. Normally, a prior warning must be given before the imposition of sanctions. *Thomas v. Capital SEC. Services, Inc.*, 836 F.2d 866 (5th Cir.1988) (*en banc*). However, "that general rule is not applicable ... where the complaint is merely the latest in a string of § 1983 filings, nearly all of which are dismissed as frivolous.

In such a setting the *Thomas* warning is not a requisite to the imposition of sanctions." *Moody v. Baker,* 857 F.2d 256 (5th Cir.1988).

19. The Humphrey cases handled by this court (Judge Buchmeyer) are CA 3–87–2945–R (dismissed Dec. 22, 1987); CA 3–88–1929–R (dismissed August 31, 1988, but motion to file amended complaint pending); and Misc. 2722 (request to proceed in forma pauperis denied October 19, 1988). An order imposing sanctions will be entered in each case.

20. On his last § 2254 form, Humphrey stated that he did have some money in his inmate account at the Dallas County Jail. See also *Prows v. Kastner,* 842 F.2d 138 (5th Cir.1988).

## APPENDIX A

### PRISONER CIVIL RIGHTS SUITS (550)
### AND HABEAS PROCEEDINGS (530)
### DALLAS DIVISION
### (JULY 1987 – JUNE 1988)

| | PRISONER (DALLAS) | | | | | *OTHER (DALLAS) | | DALLAS |
|---|---|---|---|---|---|---|---|---|
| | FILINGS 530 === | PERCENT 530 === | FILINGS 550 === | PERCENT 550 === | TOTAL 530/550 ====== | PERCENT 530/550 ======= | TOTAL OTHER ===== | PERCENT OTHER ===== | TOTAL FILINGS ====== |
| 87 JULY | 27 | 9.9% | 31 | 11.3% | 58 | 21.2% | 216 | 7.0% | 274 |
| 87 AUGUST | 15 | 6.4% | 8 | 3.4% | 23 | 9.8% | 212 | 6.9% | 235 |
| 87 SEPTEMBER | 24 | 10.1% | 11 | 4.6% | 35 | 14.7% | 203 | 6.6% | 238 |
| 87 OCTOBER | 11 | 4.8% | 20 | 8.7% | 31 | 13.5% | 198 | 6.4% | 229 |
| 87 NOVEMBER | 21 | 7.7% | 15 | 5.5% | 36 | 13.1% | 238 | 7.7% | 274 |
| 87 DECEMBER | 3 | 1.1% | 10 | 3.8% | 13 | 4.9% | 252 | 8.2% | 265 |
| 88 JANUARY | 19 | 8.8% | 10 | 4.7% | 29 | 13.5% | 186 | 6.0% | 215 |
| 88 FEBRUARY | 16 | 7.7% | 12 | 5.7% | 28 | 13.4% | 181 | 5.9% | 209 |
| 88 MARCH | 15 | 6.0% | 16 | 6.4% | 31 | 12.4% | 218 | 7.1% | 249 |
| 88 APRIL | 13 | 4.4% | 10 | 3.4% | 23 | 7.8% | 272 | 8.8% | 295 |
| 88 MAY | 21 | 6.6% | 26 | 8.2% | 47 | 14.9% | 269 | 8.7% | 316 |
| 88 JUNE | 20 | 6.8% | 23 | 7.9% | 43 | 14.7% | 249 | 8.1% | 292 |
| | === | ==== | === | ==== | ====== | ===== | === | === | ====== |
| TOTALS | 205 | 6.6% | 192 | 6.2% | 397 | 12.8% | 2694 | 87.2% | 3091 |

* OTHER = FILINGS OTHER THAN PRISONER PETITIONS

530 = PRISONER PETITION – Habeas Corpus
550 = PRISONER PETITION – Civil Rights

