IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

S))))))))))))))))Q
No. 95-20064
Summary Calendar
S))))))))))))))))Q

WILLIE WOOD,

Plaintiff-Appellant,

versus

JOE NESMITH,

Defendant-Appellee.

S)))))))))))))))))))))))))))Q
Appeal from the United States District Court for the
Southern District of Texas
(CA H 92 1799)
S)))))))))))))))))))))))))))Q
June 26, 1995

Before GARWOOD, HIGGINBOTHAM and DAVIS, Circuit Judges.[*]

GARWOOD, Circuit Judge:

Plaintiff-appellant Willie Wood (Wood) appeals the district court's dismissal of his 42 U.S.C. § 1983 suit as frivolous under 28 U.S.C. § 1915(d). We vacate and remand.

**Facts and Proceedings Below**

[*]    Local Rule 47.5 provides:  "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

On June 18, 1992, Wood, an inmate confined in the Institutional Division of Ellis II Unit of the Texas Department of Criminal Justice (TDCJ) in Huntsville, Texas, filed this suit pursuant to 42 U.S.C. § 1983 against Joe Nesmith, a captain in TDCJ's Internal Affairs Division.  In his original complaint, Wood alleged that Nesmith, during a search of Wood's cell, destroyed Wood's watch and destroyed or misplaced Wood's radio booster and a Smith-Corona typewriter.  According to Wood's complaint, Nesmith destroyed his property in retaliation for Wood's exercise of his Fifth Amendment privilege in an investigation that Nesmith was conducting concerning forged commitment papers that could potentially enable an inmate to be released early.  The investigation centered on Wood because another inmate told investigators that Wood had helped him modify records in an effort to secure early release, but Wood refused to discuss the matter with Nesmith, invoking his Fifth Amendment privilege against self-incrimination.  Wood asserts that he was acquitted of a similar forgery charge in 1986.

The district court referred Wood's case to a magistrate judge, who, on August 5, 1993, ordered Wood to submit a more definite statement of the facts of his case and answer specific questions. These questions included "What did [Nesmith] say or do to lead you to believe the property was destroyed in retaliation for your refusal to cooperate?"  Wood responded that Nesmith told him "that since I didn't want to talk to him that I might get my propert[y] back and I might not."  Wood further stated that when Nesmith

2

returned his property to him, his typewriter and radio booster were not in the box. According to Wood, "I hollowed [sic] at him after he walked away asking him about my typewriter and he said . . . you know Pay Back when you see it don't you." Wood also alleged that his ring was missing and that his watch was returned to him "in a brown envelope destroyed."[1] The magistrate judge granted Wood leave to proceed *in forma pauperis*.

On September 6, 1994, Wood filed an amended complaint, alleging that Nesmith had discovered a volume of the Southwest Reporter in Wood's cell and filed charges falsely accusing him of stealing the book that belonged to his cellmate. Wood asserted that, based on Nesmith's accusation, he was found guilty of destroying state property at a prison disciplinary hearing and ordered to reimburse the state fifteen dollars for the book and to serve fifteen days in solitary confinement. Wood alleged that Nesmith filed the charges related to the Southwest Reporter "solely to haress [sic] Plaintiff and to make sure Plaintiff be locked up."

In his amended complaint, Wood also alleged that Nesmith seized the wills of his parents and a fire insurance policy on his home. Wood asserted that Nesmith took and failed to return these items because a Texas jury had acquitted Wood on a charge of tampering with state records. In addition, Wood asserted that Nesmith destroyed some of his personal property and failed to

---

[1] Wood did not mention his ring in the statement of the facts contained in his original complaint. He did, however, list a ring as part of his property misplaced or destroyed by Nesmith in the prayer for relief.

return other items in retaliation for Wood's exercise of his Fifth Amendment right during Nesmith's investigation of the forgery. Wood alleged that, when he refused to answer Nesmith's questions about the forgery investigation, Nesmith told him "he would know Pay-back when he seen [sic] it."

The district court held a *Spears* hearing on January 3, 1995. Wood and several TDCJ officials testified at this hearing, but Nesmith was not present. At the *Spears* hearing, Wood reiterated the allegations of his complaint, asserting that Nesmith had falsely accused him of the Southwest Reporter incident in retaliation. Wood also testified that Nesmith had arranged for him to be placed in administrative segregation in retaliation for his exercise of his Fifth Amendment right and because he had been acquitted at trial of the forgery charges. Wood testified that Nesmith had taken his ring, watch, typewriter, his diary, his parents' wills, and his insurance policy and that Nesmith never returned any of these items.[2] Wood testified, "But after I took the Fifth, he told me, said, well, you just might get your property back, you know. So, this is the reason I'm saying retaliation on his part because I wouldn't talk to him."

At the conclusion of the *Spears* hearing, the district court dismissed Wood's complaint with prejudice as frivolous under 28

---

[2]    In his more definite statement, Wood stated that Nesmith returned his watch "in a brown envelope destroyed."  However, at the *Spears* hearing, Wood testified that "[Nesmith] never returned my watch."   In his more definite statement and again in his brief on appeal, Wood alleges that Nesmith took a personal diary (or diaries).  Wood, however, does not make this allegation about the diary in either his original or amended complaints.

4

U.S.C. § 1915(d). In so holding, the district court reasoned that the conduct alleged by Wood failed to raise an inference of retaliation and that Wood's conclusory claim was insufficient. When Wood inquired about his property damage claims, the district court informed him that he would have to pursue those claims in state court. Wood filed a timely notice of appeal and was granted leave to proceed *in forma pauperis*.

## Discussion

Dismissal of an *in forma pauperis* petition under 28 U.S.C. § 1915(d) is appropriate where the district court is satisfied that the action is frivolous. An action is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 109 S.Ct. 1827, 1831-32 (1989); *see also Booker v. Koonce*, 2 F.3d 114, 115-16 (5th Cir. 1993). We review a district court's section 1915(d) dismissal for abuse of discretion. *Mackey v. Dickson*, 47 F.3d 744, 745 (5th Cir. 1995).

In the district court below, Wood essentially voiced two complaints, that Nesmith damaged and destroyed his personal property in retaliation for his exercise of his Fifth Amendment rights and that Nesmith filed the allegedly false charges concerning the law book to harass him and ensure that he was placed in administrative segregation. In his brief on appeal, Wood does not raise the argument that Nesmith retaliated against him by charging him in the law book incident. Accordingly, Wood has abandoned this argument, and we will not consider it. *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993). Wood argues for the

5

first time on appeal that Nesmith retaliated against him because of his exercise of his right of access to the courts and that Nesmith failed to return religious materials to him in violation of the First Amendment. We will not entertain these arguments because Wood failed to raise them in the district court below. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

The only remaining issue is whether Wood has alleged a constitutional claim based on his allegations that Nesmith destroyed his personal property in retaliation for the exercise of his Fifth Amendment rights. Relying on *Whittington v. Lynaugh*, 842 F.2d 818 (5th Cir.), *cert. denied*, 109 S.Ct. 108 (1988), the district court held that Wood's allegations did not raise an inference of retaliation because his claims were conclusory and insufficient. In so holding, the district court rejected Wood's reliance on Nesmith's alleged statements concerning "pay back," stating that threats were not actionable under section 1983.

In *Whittington*, an inmate filed suit under 42 U.S.C. § 1983 against prison officials, alleging that the defendants denied him certain perks in retaliation for his having filed prior lawsuits against the Texas prison system. The district court dismissed the suit as frivolous under section 1915(d), and the inmate appealed. After recognizing that "[s]erious status discrimination in retaliation for a prisoner exercising his right to go to court would violate a prisoner's civil rights," *id.* at 819 (citation omitted), the *Whittington* court affirmed the district court's dismissal on the ground that the inmate had "advanced nothing but

6

the claim itself without the slightest support of any factual allegations." *Id.* The *Whittington* court reasoned that federal courts cannot entertain every claim by inmates claiming that prison officials discriminated against them for one reason or another. *Id.* ("If we were to hold that appellant by his allegations in this case had established a case which was entitled to the full panoply of discovery, appointment of counsel, jury trial and the like, we would be establishing a proposition that would play havoc with every penal system in the country.").

Under *Whittington*, a prisoner asserting a retaliation claim must at least raise an inference of retaliation and may not rely solely on unsupported and insufficient allegations. The district court concluded that Wood's allegations were insufficient to raise an inference of retaliation.[3] We disagree. Based on the allegations of Wood's complaint, his more definite statement, and his *Spears* hearing testimony, we hold that Wood raised an inference of retaliation for exercise of Fifth Amendment rights against self-incrimination sufficient to survive a section 1915(d) dismissal. Such a claim of retaliation is not legally *frivolous* under *Neitzke*.

---

[3]     In holding that Wood failed to raise an inference of retaliation, the district court reasoned that verbal threats were insufficient to state a claim under section 1983. We agree with the district court's reasoning concerning threats. *See Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983.)". Thus, if Wood claimed only that Nesmith threatened to take action against him in retaliation for invoking his Fifth Amendment right against self-incrimination, the district court's reasoning would surely apply. Wood's complaint, however, alleges more than verbal threats of retaliation; rather, he asserts that Nesmith followed through with his threats and destroyed his property. Accordingly, the district court erroneously relied on *Bender*.

Wood alleged that he invoked his Fifth Amendment right against self-incrimination when he refused to answer Nesmith's questions concerning the forgery investigation, that Nesmith unlawfully destroyed his property without color or claim of justification, and that Nesmith told Wood that he destroyed his property as "pay back" for Wood's refusal to answer his questions. Although we express no view on the ultimate legal and factual merits of Wood's retaliation claim, we hold that on the present record the district court abused its discretion in dismissing this portion of Wood's complaint as frivolous under section 1915(d).

## Conclusion

For the foregoing reasons, the judgment of the district court is VACATED and the cause is REMANDED.