Milton Eugene CUPIT,
Plaintiff-Appellant,

v.

James "Sonny" JONES, et al.,
Defendants-Appellees.

No. 87–4432.

United States Court of Appeals,
Fifth Circuit.

Dec. 24, 1987.

Milton E. Cupit, pro se.

William R. Coenen, Jr., Rayville, La., for defendants-appellees.

Before BROWN, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

Plaintiff Milton Eugene Cupit appeals an order by the district court granting defendants' motion for summary judgment and dismissing Cupit's section 1983 civil rights claim against Richland Parish prison officials with prejudice. In entering its order, the district court relied on the report and recommendation of the magistrate prepared after an evidentiary hearing was conducted on Cupit's claim. On appeal, Cupit alleges that the district court's decision was not warranted by the evidence, and that he was improperly denied appointment of counsel. Furthermore, Cupit alleges that the magistrate erred in denying his request that subpoenas be issued for several witnesses and that certain jail documents be produced. Having considered the record before us, we reject Cupit's contentions and affirm.

## I. FACTS AND PROCEDURAL HISTORY

In April 1985, plaintiff Cupit was arrested and subsequently detained at the Richland Parish Jail. Thereafter, on June 7, 1986, Cupit was convicted of second-degree murder and sentenced to life imprisonment without the benefit of parole, probation, or suspension and was transferred to the Louisiana Department of Corrections system.

On October 9, 1985, Cupit filed the instant section 1983 claim against Richland Parish Jailer James "Sonny" Jones, Sheriff Laurell Graham, and the Richland Parish Police Jury. In his complaint, Cupit alleged that prior to his arrest, he had suffered a major heart attack on January 19, 1985, after which he had heart surgery at E.A. Conway Hospital in Monroe, Louisiana, and at the L.S.U. Medical Center and V.A. Hospitals in Shreveport. Cupit further alleged that during the time he was a pretrial detainee at Richland Parish Jail, he was denied proper medical attention for his heart condition as he was not provided the requisite diet, exercise, medication and stress-free atmosphere recommended by his doctors. As damages for the alleged deprivations, Cupit requested $1,000 per day plus interest for the period he was confined at Richland Parish Jail and also requested that the defendant prison officials be placed under a court order to comply with his doctors' instructions.

Thereafter, the defendants filed a motion for summary judgment asserting that they did not have any specific knowledge of the requirements for Cupit's special diet or exercise, but when they were notified from medical personnel that such instructions did exist, they adhered to those instructions. Cupit then filed an opposition to the motion for summary judgment after which the magistrate determined that there was a genuine issue as to material facts; therefore, an evidentiary hearing to supplement the affidavits and exhibits of the parties was scheduled for April 10, 1986. Prior to the hearing, Cupit requested that the magistrate appoint counsel to assist him in the presentation of his claim. The magistrate denied Cupit's motion for counsel on May 28, 1986. As a result, Cupit appeared pro se at the evidentiary hearing. In addition to denying Cupit's motion for appointment of counsel, the magistrate denied a request by Cupit that subpoenas be issued for several witnesses and that certain jail documents be produced.

Following the evidentiary hearing on April 10, the magistrate recommended dismissal with prejudice of Cupit's complaint, determining that Cupit's claims of denial of proper exercise, medication, diet and stress-free atmosphere were not supported by the evidence. Specifically, the magistrate found that Cupit did not show that Richland Parish prison officials acted with deliberate indifference to his medical needs. In making his conclusions, the magistrate relied on the standard of medical care due prisoners espoused by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). On May 26, 1987, the district court, after an independent review of the record and objections filed by Cupit, ordered that the defendants' motion for summary judgment be granted and the civil rights complaint of Cupit be dismissed with prejudice. Cupit appeals the district court's order.

## II. DISCUSSION

### A. *Denial of Medical Care*

Initially, Cupit argues that the magistrate erred in determining that prison officials were not deliberately indifferent to his needs for special medical care, diet, exercise, and stress-free atmosphere. We note that the time frame for which plaintiff is seeking damages for the alleged deprivations is that period of time when he was a *pretrial detainee* at Richland Parish Jail, not a convicted prisoner who had already been adjudicated guilty. Pretrial detainees, as opposed to convicted prisoners, are those individuals who have been charged with a crime but who have not yet been tried on the charge. *Bell v. Wolfish*, 441 U.S. 520, 523, 99 S.Ct. 1861, 1865, 60 L.Ed. 2d 447 (1979). We highlight the distinction between pretrial detainees and convicted prisoners because the due process clause of the fourteenth amendment accords pretrial detainees rights not enjoyed by convicted inmates under the eighth amendment prohibition against cruel and unusual punishment. *Jones v. Diamond*, 636 F.2d 1364, 1368 (5th Cir.1981) (en banc), *overruled on other grounds*, 790 F.2d 1174 (1986). Specifically, "while a sentenced inmate may be punished in any fashion not cruel and unusual, the due process clause forbids punishment of a person held in custody await-

ing trial but not yet adjudged guilty of any crime." *Id.*

In *Bell v. Wolfish,* the Supreme Court determined that as to pretrial detainees, the proper inquiry under the due process clause is whether conditions accompanying pretrial detention are imposed upon detainees for the purpose of punishment, as the due process clause does not permit punishment prior to an adjudication of guilt. *Bell,* 441 U.S. at 535, 99 S.Ct. at 1871.

> Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Id.* at 539, 99 S.Ct. at 1874. This Circuit has applied the *Bell v. Wolfish* criterion to medical attention for pretrial detainees, stating, "[t]he *Bell v. Wolfish* criterion, applied to medical attention, entitles pretrial detainees to reasonable medical care unless the failure to supply it is reasonably related to a legitimate governmental objective." *Jones,* 636 F.2d at 1378.

■ In a recent decision by this Court, *Partridge v. Two Unknown Police Officers of Houston,* 791 F.2d 1182 (5th Cir. 1986), the Court held that prison officials had a duty, at a minimum, not to be deliberately indifferent to [the plaintiff's] serious medical needs. *Id.* at 1187. Today, we conclude that pretrial detainees are entitled to reasonable medical care unless the failure to supply that care is reasonably related to a legitimate governmental objective. Furthermore, pretrial detainees are entitled to protection from adverse conditions of confinement created by prison officials for a punitive purpose or with punitive intent. We perceive this holding to be consistent with the criterion for conditions imposed on

pretrial detainees set forth by the Supreme Court in *Bell v. Wolfish.*[1] In so holding, we recognize that the distinction as to medical care due a pretrial detainee, as opposed to a convicted inmate, may indeed be a distinction without a difference, for if a prison official acted with deliberate indifference to a convicted inmate's medical needs, that same conduct would certainly violate a pretrial detainee's constitutional rights to medical care. However, we believe it is a distinction which must be firmly and clearly established to guide district courts in their evaluation of future cases involving the constitutionality of all conditions imposed upon pretrial detainees.

■ In the instant case, the magistrate, in denying Cupit's claim, applied the standard for medical care due convicted prisoners set forth in *Estelle v. Gamble,* and not the standard of medical care due pretrial detainees. Nevertheless, we conclude that despite the fact that the magistrate applied the wrong standard, the district court properly granted defendants' motion for summary judgment and dismissed Cupit's claim. Indulging all inferences from the evidence in favor of Cupit, *United States Steel Corp. v. Darby,* 516 F.2d 961, 963 (5th Cir.1975), we are not persuaded that Cupit has shown that he was denied reasonable medical care.

In fact, the evidence supports the conclusion that the Richland Parish prison officials made every effort to accomodate Cupit's particular needs. As to Cupit's medication, the nurse on call at the jail, Pauline Jones, testified that prescription medicine was dispensed to Cupit four times a day as prescribed. On those occasions when the medication was not actually dispensed four times per day, it was dispensed three times per day and on the third dose, Cupit was given an extra pill which he could hold and take later.

Furthermore, the evidence establishes that Cupit was provided with sufficient ex-

1. In *Whisenant v. Yuam,* 739 F.2d 160 (4th Cir. 1984), the court, in ruling on the standard of medical treatment due pretrial detainees, stated that a pretrial detainee is entitled to protection from adverse treatment if he can prove punitive intent or that a restriction or condition of confinement is not reasonably related to a legitimate goal. *Id.* at 164.

ercise while he was incarcerated at Richland Parish Jail. Specifically, upon notification from Cupit's attorney on April 2, 1986, that Cupit requested to be in an open area of the jail for one hour each day to exercise, the prison officials adhered to the attorney's request. Prior to notification by Cupit's attorney and his doctor in April 1986 that Cupit required special exercise, Cupit was provided more exercise than any other inmate at the prison facility. In fact, on different occasions, Cupit even refused to walk when he was offered the opportunity to do so.

Cupit also alleged that prison authorities had not provided him with the low sodium diet requested by his physicians for his heart condition. In support of his claim, Cupit presented two prescription forms allegedly prepared by his doctors directing the sheriff to provide Cupit with a low sodium diet, which Cupit maintained were in the possession of prison officials in April 1985. However, the forms are not dated, addressed, or corroborated by testimony of the physicians. When medical authorities did notify prison officials of plaintiff's low salt diet requirement in January 1986, prison officials immediately notified their food service of the special diet, after which Cupit admits that he began receiving meals marked "low salt."

■ Finally, Cupit alleges that he was entitled to a stress-free atmosphere while he was incarcerated at Richland Parish Jail. We find this contention without merit. Because we believe that Cupit was not denied reasonable medical attention, nor was he subjected to any conditions, dietary or otherwise, which would amount to punishment within the context of the due process clause, we reject Cupit's contentions on appeal.

B. *Request for Counsel and Issuance of Subpoenas*

■ Cupit additionally argues that the magistrate erred in refusing to appoint counsel to assist him in the pursuance of his section 1983 claim. There is no automatic right to the appointment of counsel in a section 1983 case. *Jackson v. Dallas*

*Police Department*, 811 F.2d 260, 261 (5th Cir.1986). Furthermore, a district court is not required to appoint counsel in the absence of "exceptional circumstances" which are dependent on the type and complexity of the case and the abilities of the individual pursuing that case. *Id.* at 261. We will overturn a decision of the district court on the appointment of counsel only if a clear abuse of discretion is shown. *Id.*

In the instant case, the magistrate, in denying Cupit's motion for counsel, found that the type of case was not complex, that Cupit had done a credible job of presenting motions and filing papers, that Cupit had been adequately able to investigate his case, and that the evidence primarily would consist of medical records and other documentary evidence. Furthermore, the magistrate noted Cupit's ability to interrogate witnesses at the evidentiary hearing; therefore, the magistrate denied Cupit's motion for counsel. On this record, we do not perceive the magistrate's decision denying Cupit counsel to be an abuse of discretion. *See Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir.1982).

■ Cupit also claims that the magistrate erred in refusing to grant his request that subpoenas be issued to approximately nine witnesses and in denying his request for production of certain jail documents. While we have found no authority in our Circuit on this specific point, the Eighth Circuit has held that the trial court "has discretionary power to refuse to subpoena witnesses and prevent abuse of process in both civil and criminal proceedings." *Mosby v. Mabry*, 697 F.2d 213, 214 (8th Cir. 1982). *See also Cookish v. Cunningham*, 787 F.2d 1, 5 (1st Cir.1986) (No authority exists for the proposition that an indigent litigant is constitutionally entitled to subpoena an unlimited number of witnesses, including prisoners, without the payment of witness fees, and without a more substantial showing of need for the testimony of the requested witnesses.). As Cupit has failed to demonstrate that any relevant testimony was excluded because the magistrate denied his request to subpoena witnesses, nor has Cupit demonstrated a sub-

stantial showing of need for the testimony of those witnesses, we conclude that the magistrate did not abuse his discretion in denying Cupit's request. As a practical matter, most of the witnesses requested by Cupit testified at the evidentiary hearing. Furthermore, we believe that the magistrate's decision to deny Cupit's request for production of jail documents did not constitute an abuse of discretion. The magistrate noted in his order denying Cupit's request for production of documents that the defendants would have the requested documents at the evidentiary hearing. We therefore reject Cupit's contentions and affirm the judgment of the district court.

AFFIRMED.