903 F.2d 400
 Mildred SIMPSON, etc., Plaintiff-Appellee,
v.
Ike HINES, Darrel Broussard, Harley Lovings, Leveral
Sweeten, Willie Carter, Royce Wheeler, James
Primeaux, Anne Merchant, Larry McMillan
and Tom Yates, Defendants-Appellants.
 No. 89-6204
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 June 19, 1990.
 Gilbert I. Low, David J. Fisher, Orgain, Bell & Tucker, Beaumont, Tex., for defendants-appellants.
 John E. Sherman, Houston, Tex., for plaintiff-appellee.
 Appeal from the United States District Court for the Eastern District of Texas.
 Before POLITZ, GARWOOD, and JOLLY, Circuit Judges.
 POLITZ, Circuit Judge:
 
 
 1
 Invoking qualified immunity, defendants, nine law enforcement officers, appeal denial of their motion for dismissal or alternatively for summary judgment in a 42 U.S.C. Sec. 1983 action based on the death of Kenneth Earl Simpson while being held in the Cleveland, Texas city jail. We dismiss former Police Chief Harley Lovings' appeal as premature, reverse the excessive force claim against Officer Lawrence McMillan, but otherwise affirm.
 
 Background
 
 2
 Simpson was arrested after a confrontation with Cleveland Police Officer Tom Yates over a Cross pen which Yates mistakenly believed that Simpson had stolen from him. Arriving at the stationhouse in an evidently volatile, drug-affected state, Simpson refused to be searched. After being placed in a cell, he brandished marihuana. When Simpson could not be persuaded to surrender the contraband or his other personal effects, ten law enforcement officers entered the cell: Police Captain Hines, Police Officers Yates, Darrel Broussard, Leveral Sweeten, James Primeaux, and Anne Merchant, Liberty County Deputy Sheriffs Willie Maurice Carter and Royce Wheeler, and Department of Public Safety State Troopers John McDaniel and Don Smith.
 
 
 3
 A struggle ensued, the details of which are in dispute. Defendants contend that Simpson violently resisted their efforts to search his pockets. To overcome his resistance, Hines put his arm around Simpson's neck while the other officers grabbed Simpson's arms and legs. The officers forced Simpson to the floor and attempted to handcuff him while Broussard, nicknamed "Beef" due to his large size, sat on Simpson's chest. Unable to restrain Simpson in this position, they rolled him on his stomach, cuffed his hands behind his back, and cuffed his legs.
 
 
 4
 Plaintiffs maintain that Simpson was struggling in self defense. In a muffled tape recording of the incident made by the police Simpson can be heard alternately cursing, saying "all right, all right," asking the police to "lighten up," and then begging for help and screaming. He was silent, however, for several minutes before the police left the cell at about 12:30 a.m. Still double-cuffed, Simpson apparently lay motionless on the floor of the cell as the officers exited.
 
 
 5
 McMillan looked into Simpson's cell twice during the night, noting that he had not moved. At approximately 5:15 a.m., Sweeten entered the cell and discovered Simpson dead. A pool of blood lay near his head, his pants had been pulled down below his buttocks, and rigor mortis had set in. According to the medical examiner's report, Simpson died "as a result of asphyxia due to trauma to [the] neck." The custodial death report fixed the time of death at 12:30 a.m. and stated that Simpson was asphyxiated during a struggle to subdue him.
 
 
 6
 Simpson's survivors filed suit under 42 U.S.C. Secs. 1983, 1985, and 1986 against various defendants, including the law enforcement officers who had participated in the struggle and the then Cleveland, Texas Police Chief Harley Lovings, alleging violation of the fourteenth amendment in the use of excessive force and failure to provide medical care, a conspiracy to deprive Simpson of his constitutional rights, as well as pendent state claims. Discovery ensued. Captain Hines, Officers Broussard, Yates, Merchant, Sweeten, Primeaux, McMillan, and Sheriff Deputies Carter and Wheeler moved to dismiss or alternatively for summary judgment on grounds of qualified immunity. Chief Lovings, sued only in his official capacity, joined the motion on grounds of lack of supervisory liability. The district court denied defendants' motion and all timely appealed. 730 F.Supp. 753.
 
 Analysis
 
 7
 1. Qualified Immunity.
 
 
 8
 The doctrine of qualified immunity shields a police officer from liability for civil damages when a reasonable officer could have believed that the challenged conduct did not violate clearly established statutory or constitutional rights. Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); Morgan v. City of DeSoto, Texas, 900 F.2d 811 (5th Cir.1990). Because the immunity conferred shields a defendant from suit as well as liability, an order denying a defendant's claim of qualified immunity is immediately appealable notwithstanding its interlocutory character. Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The appealable issue is a legal one: whether the challenged conduct supports a claim of violation of a clearly established legal norm. Mitchell. In making this determination we consider the allegations in the complaint in light of the summary judgment evidence. See, e.g., Morgan; Geter v. Fortenberry, 882 F.2d 167 (5th Cir.1989). Summary judgment evidence, including all reasonable factual inferences drawn therefrom, is viewed in the light most favorable to the non-movant. Xerox Corp. v. Genmoora Corp., 888 F.2d 345 (5th Cir.1989). From this perspective, we agree with the district court and conclude that defendants are not entitled to qualified immunity, with the one exception noted.
 
 
 9
 a. Excessive force
 
 
 10
 Plaintiffs claim that the law enforcement officers used excessive force in searching Simpson. The incident occurred in March 1988, prior to the Supreme Court's decision in Graham v. Connor, --- U.S. ----, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Graham established that excessive force claims based on conduct occurring before or during arrest are governed by the fourth amendment's objective reasonableness standard. However, prior to Graham, the "clearly established legal norm" in this circuit was that excessive force claims were governed by the fourteenth amendment substantive due process test, as enunciated in Shillingford v. Holmes, 634 F.2d 263, 265 (5th Cir.1981):
 
 
 11
 If the state officer's action caused severe injury, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983.
 
 
 12
 See, e.g., Stevens v. Corbell, 832 F.2d 884 (5th Cir.1987), cert. denied, 486 U.S. 1033, 108 S.Ct. 2018, 100 L.Ed.2d 604 (1988) (arrestee in custody); McFadden v. Lucas, 713 F.2d 143 (5th Cir.), cert. denied, 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983) (convicted prisoner). Thus, our inquiry is whether a reasonable law enforcement officer would have realized that he was using excessive force, as defined in Shillingford, in searching Simpson. If the answer is in the affirmative, defendants are not entitled to qualified immunity.
 
 
 13
 Defendants' own reports indicate that ten officers entered Simpson's cell and collectively used physical force against him. Captain Hines admittedly placed Simpson in a neckhold and exerted sufficient pressure to subdue him. Broussard admittedly sat "astraddle him;" an investigatory report by the Texas Rangers more precisely placed Broussard on Simpson's chest. The custodial death report states that Simpson died of asphyxia as a result of trauma to the neck sustained during this struggle; the medical examiner's report also attributed death to trauma to the neck. Alternatively, according to a physician's report submitted by plaintiffs, Simpson could have died of asphyxiation resulting from the pressure exerted when Broussard sat on his chest. Defendants claim that such force was necessary; plaintiffs counter that Simpson's screams and repeated cries for mercy are evident on the tape recording. Finally, the tape recording contains statements from which the trier-of-fact might infer malice. Viewing the record in the light most favorable to plaintiffs, we find ample evidence that the defendant officers who entered Simpson's cell reasonably should have known that in subduing and searching Simpson they maliciously used force which was grossly disproportionate to the need and was calculated to injure Simpson severely.
 
 
 14
 Defendants argue that they cannot be held individually liable absent evidence that each defendant's actions caused severe injuries. Their argument is unpersuasive where the officers discussed beforehand how to handle the situation and functioned as a unit once inside Simpson's cell. Lynch v. Cannatella, 810 F.2d 1363 (5th Cir.1987), on which defendants rely, is inapposite. In Lynch, plaintiffs complained of several separate and discrete incidents of official malfeasance. There was no identity of either purpose or action in Lynch.
 
 
 15
 Officer McMillan, however, is entitled to qualified immunity with respect to the excessive force claim. The record reflects that McMillan was not among the officers who entered Simpson's cell. There is no indication whatever that he used any physical force against Simpson, let alone force that a reasonable officer would have known was excessive.
 
 
 16
 b. Lack of medical care
 
 
 17
 Plaintiffs also assert a claim for deliberate denial of necessary medical care. Defendants claim immunity, saying that they did not know of Simpson's critical medical condition. Immunity does not lie; the record permits a reasonable inference that the officers were at least callously indifferent to Simpson's medical condition.
 
 
 18
 Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), established that deliberate indifference to the serious medical needs of a prisoner violates the eighth amendment. In Cupit v. Jones, 835 F.2d 82 (5th Cir.1987), this court "firmly and clearly established" that the duty owed pretrial detainees under the fourteenth amendment is one of "reasonable medical care unless the failure to supply that care is reasonably related to a legitimate governmental objective." 835 F.2d at 85. For present purposes, the distinction is without a difference. Immunity does not lie whether we apply the Gamble or Cupit standard.
 
 
 19
 The record, albeit conflicting, contains evidence that Simpson was unconscious at the time the officers left the cell. The officers knew that Simpson had not only heavily exerted himself during the struggle but also, as one officer commented, was "strung out" on drugs. Defendants now attribute Simpson's death to the combination of these two factors. Nonetheless, the police tape recording indicates that the officers paid scant attention to Simpson's physical condition during the approximately five minutes between Simpson's lapse into silence and the officers' exit from the cell. Instead there were intermittent laughs while one officer complained that the exertion had messed up his hair and another spoke of getting something to drink.
 
 
 20
 Officer McMillan, who walked back to the cell and observed that Simpson was not moving shortly after the other officers left, at Primeaux's request checked Simpson from outside the cell twice during the night. Both times he saw that Simpson had not moved but he did not enter the cell to check Simpson more closely, nor did he alert anyone.
 
 
 21
 We conclude that the record is sufficient to warrant trial of all nine officers on the plaintiffs' claim of denial of medical care.
 
 
 22
 c. Conspiracy claims
 
 
 23
 What we have said concerning the excessive force and denial of medical care claims applies also to the claims of conspiracy to violate Simpson's constitutional rights in these respects. As we have noted, appellants have not established an immunity bar to trial on the underlying excessive force and denial of medical care claims.
 
 
 24
 2. Chief Lovings' liability.
 
 
 25
 Because Chief Lovings is sued in his official capacity only, qualified immunity is not at issue. Therefore denial of Chief Lovings' motion for summary judgment is not an appealable order. Chief Lovings' appeal is accordingly dismissed.
 
 
 26
 The appeal of Chief Lovings is DISMISSED; the judgment of the district court denying Officer McMillan qualified immunity for use of excessive force is REVERSED; in all other respects, the judgment of the district court is AFFIRMED.